IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN KEITH MONTGOMERY,

    Petitioner,                    2: 08 - cv - 3180 MCE TJB

    vs.

D.K. SISTO,                        <u>ORDER, AMENDED FINDINGS AND</u>

                                              <u>RECOMMENDATIONS</u>

    Respondent.

_____/

## I. INTRODUCTION

Petitioner, Brian Keith Montgomery, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of life with the possibility of parole plus eight years of enhancements for attempted murder. Petitioner challenges the October 2007 decision by the Board of Parole Hearings (the "Board") denying Petitioner parole. Petitioner argues that he was denied his due process rights when the Board arbitrarily and capriciously found him unsuitable for parole. For the foregoing reasons, the petition should be denied.

1

## II. FACTUAL[1] AND PROCEDURAL BACKGROUND

On the afternoon of December 4th, 1990, the defendant was driving a black 1976 Dodge Charger containing a propane stove, a box of glassware and a large bag of unfinished methamphetamine. He went to the homes of two friends and asked permission to complete the process of manufacturing methamphetamine. They each deny permission to do so. Defendant left about 5:00 or 5:30 p.m. About 6:00 p.m., El Dorado County Sheriff's Deputy, Robert Pepper, was on patrol in the Summerset area in a marked car. On Highway East 16, he saw a black Dodge traveling at high speed. Pepper attempted to stop the car for excessive speed by activating his overhead strobe light. The Dodge slowed to about 20 miles per hour and although it could've stopped safely, the Dodge entered a store parking lot, slowed to 5 miles per hour, drove onto an adjourning street, continued about 100 feet, turned into another parking lot, drove 75 feet and stopped.

Pepper stopped and approached the defendant, the driver, who sat with his hands out of view near the seat. Pepper briefly moved the beam of his flashlight through the car and seen only the defendant and concluded he was alone in the car. Defendant said, "Good evening, officer" and Pepper asked him to put his hands on the steering wheel. Defendant's right arm moved and Pepper saw a very faint muzzle flash coming from the driver's area of the vehicle and heard eight or nine reports of a .22 semi-automatic long rifle coming in split-second succession from the area of the vehicle. Pepper took cover behind his patrol car and returned fire, observing defendant's car door was open slightly. Defendant's car sped off. Pepper, who wore a bullet-proof vest, suffered nine bullet wounds to the chest, shoulder, side, abdomen, and back, and underwent two surgeries as a result."

"The Charger passed a woman who had been shopping nearby. She looked directly into the Charger, which was no more than 15 feet away, and saw there was no one in the passenger seat. Others witnessed at least portions of the occurrence, but could not identify the assailant. About 9:10 p.m., defendant telephoned his long-time friend, Lisa Thomason-Downs, said there was an emergency and asked her to pick him up near Summerset. She complied and found the defendant very scared, nervous and upset. Defendant said she would not like him anymore because he shot someone. He didn't know who he shot, but it was someone who walked up to his window with a red light. Defendant also said there was 2 pounds of methamphetamine and equipment for cooking methamphetamine in the car, and he hid the car and the gun he

---

[1] The factual background of the commitment offense is taken from the appellate court ruling which was read into the record during Petitioner's October 2007 parole suitability hearing. Petitioner attached a copy of the transcript of that hearing to his petition.

> used. Defendant said nothing about anyone being with him or about a man name Tex. As she dropped him off, defendant asked her not to tell anyone she had picked him up. Defendant later asked for and received rides from two other friends. He told each of them a man name Tex rode with him when they were stopped by a policeman and Tex shot the policeman. He told one of them that he and Tex left the scene separately and he ditched the car in a remote area, but did not know what happened to Tex, the methamphetamine or the gun. Defendant denied knowing where the rifle came from."

> When arrested the morning after the offense, the defendant had in his possession, among other things, about 30 rounds of live .22 caliber ammunition, a plastic bindle of white powder and a piece of laboratory glassware. Police found the Charger abandoned near a dirt road in a densely wooded area a mile or two from the scene of the offense. The Charger was riddle with bullet holes and contained three expended .22 caliber shells, a freon refrigerator can, an empty .22 caliber ammunition box, a small plastic bag of ephedrine (they have that down as a precursor of methamphetamine), a three-burner stove, and a vial of orange powder containing methamphetamine, ephedrine and caffeine. Nearby was a box of glassware commonly associated with the manufacture of methamphetamine, ephedrine and caffeine. Defendant's fingerprints were found throughout the car, on the freon container and on various pieces of the glassware. Ten usable, but unidentifiable fingerprints of persons other than defendant, were Derrick "Tex" Readance, were also found on the car. Defendant told police he and Tex Readance, or Resdance, from West Sacramento got together the afternoon of the offense, but no one saw them together. Defendant said he drove the Charger and Tex rode in the passenger seat. Defendant saw a red light and became frightened because he had outstanding warrants. Tex said, "Don't worry about it." They stopped, the policeman approached and Tex grabbed the defendant's .22 caliber rifle and began shooting. The officer returned fire and the defendant drove away, and hid the car. Defendant eventually admitted hiding the rifle, but later said Tex probably had it. He denied owning the glassware, but admitted using methamphetamine the day of the offense."

> "While he was in jail, the defendant showed a visitor a map with an "X" on it, made a hand gesture resembling a gun and said "X marks the spot. It would be there in a bush and go there and pick it up." Defendant said to keep it at her house because police would not search there. Under a bush at the location indicated on the map, police found the .22 caliber semi-automatic rifle used by Pepper's assailant."

(Pet'r's Pet. at p. 83-88.)

In October 2007, the Board conducted a subsequent parole consideration hearing. The

3

Board ultimately concluded that Petitioner was not suitable for parole as he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. Petitioner challenged the Board's decision in the County of El Dorado Superior Court via a state habeas petition. On March 7, 2008, the Superior Court denied the state habeas petition in a written opinion. The California Court of Appeal, Third Appellate District summarily denied the state habeas petition on April 24, 2008. The California Supreme Court summarily denied the state habeas petition on June 25, 2008. In July 2008, Petitioner filed the instant federal habeas petition.

On December 9, 2010, the undersigned issued an order, findings and recommendations which recommended denying Petitioner's habeas petition. For the following reasons, the December 9, 2010 order will be vacated and it is recommended that Petitioner's habeas petition be denied.

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

As a threshold matter, this Court must "first decide what constitutes 'clearly established

1  Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade,
2  538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law'
3  under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court
4  at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable
5  application clause, a federal habeas court making the unreasonable application inquiry should ask
6  whether the state court's application of clearly established federal law was "objectively
7  unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may
8  not issue the writ simply because the court concludes in its independent judgment that the
9  relevant state court decision applied clearly established federal law erroneously or incorrectly.
10 Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court
11 law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in
12 determining whether a state court decision is an objectively unreasonable application of clearly
13 established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only
14 the Supreme Court's precedents are binding . . . and only those precedents need be reasonably
15 applied, we may look for guidance to circuit precedents.").

16  The first step in applying AEDPA's standards is to "identify the state court decision that
17 is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).
18 When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the
19 last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). In this case,
20 the last reasoned decision came from the County of El Dorado Superior Court.

21                    IV.  PETITIONER'S CLAIM FOR REVIEW
22  Petitioner argues that the Board acted arbitrarily and capriciously in denying his parole in
23 2007 and that the denial amounts to a denial of his due process rights. The Due Process Clause
24 of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or
25 property without due process of law. A person alleging a due process violation must first
26 demonstrate that he or she was deprived of a protected liberty or property interest, and then show

5

that the procedures attendant upon the deprivation were not constitutionally sufficient. See <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 459-60 (1989). The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. See <u>Pedro v. Or. Parole Bd.</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. See <u>Greenholtz v. Inmates of Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 16 (1979).

The landscape of a California state prisoner bringing a due process claim for a denial of parole has changed with the recent United States Supreme Court decision in <u>Swarthout v. Cooke</u>, No. 10-333, – S.Ct. –, 2011 WL 197627 (Jan. 24, 2011) (per curiam). Prior to <u>Swarthout</u>, the Ninth Circuit held that as a matter of state law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating current dangerousness. See <u>Hayward v. Marshall</u>, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc). In its decision in <u>Cooke v. Solis</u>, 606 F.3d 1206, 1213 (9th Cir. 2010) <u>rev'd by</u>, <u>Swarthout</u>, 2011 WL 197627, the Ninth Circuit had held that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of the state."

As stated above, <u>Swarthout</u> reversed the Ninth Circuit in <u>Cooke</u>. The Supreme Court stated that with respect to parole:

> Whatever liberty interest exists is, of course, a *state* interest created by California law. There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal. In <u>Greenholtz</u>, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. 442 U.S. at 16. "The Constitution," we held, "does not require more." <u>Ibid.</u>

1  Swarthout, 2011 WL 197627, at *2.  The Supreme Court continued by explaining that,

2  "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the

3  petitioners] received, not whether the state court decided the case correctly."  Id. at *3.

4      In this case, Petitioner was given an opportunity to be heard at his parole suitability

5  hearing.  He also was given a statement of reasons why parole was denied.  As the Supreme

6  Court stated in Greenholtz and reaffirmed in Swarthout, that is all that is required under the

7  Federal Constitution.  Therefore, Petitioner's due process argument does not merit federal habeas

8  relief under these circumstances.

9                        V.  PETITIONER'S REQUESTS

10     A.  Request for an Order to Show Cause

11      Petitioner requests an order to show cause why habeas relief should not be granted.  (See

12  Pet'r's Pet. at p. 24.)  Respondent answered the petition on June 21, 2010.  Accordingly,

13  Petitioner's request for an order to show cause is denied as moot.

14     B.  Request for the Appointment of Counsel

15      Petitioner also requests the appointment of counsel.  There currently exists no absolute

16  right to the appointment of counsel in habeas proceedings.  See, e.g., Nevius v. Sumner, 105 F.3d

17  453, 460 (9th Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel at

18  any stage of the case "if the interests of justice so require."  In the present case, the interests of

19  justice do not so require to warrant the appointment of counsel.  Accordingly, Petitioner's request

20  for the appointment of counsel is denied.

21                        VI.  CONCLUSION

22      For all of the foregoing reasons, IT IS HEREBY ORDERED that:

23     1.  The December 9, 2010 Order, Findings and Recommendations is hereby

24        VACATED IN PART.  The December 9, 2010 Order, Findings and

25        Recommendations directed that the Clerk of Court randomly assign a District

26        Judge to this matter.  District Judge Morrison C. England, Jr. was subsequently

assigned.  To the extent that the December 9, 2010 Order ordered the Clerk of Court to randomly assign a District Judge to this case, that portion (and that portion only) of the December 9, 2010 Order, Findings and Recommendations is not vacated;

2. Petitioner's request for an order to show cause is DENIED AS MOOT; and

3. Petitioner's request for the appointment of counsel is DENIED.

Furthermore, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 31, 2011

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE